## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DANIEL S. LEPPIEN,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:23-1773** |
| **v.** | : | **(JUDGE MANNION)** |
| **LAUREL HARRY,** *et al.,* | : | |
| **Defendants** | : | |

## MEMORANDUM

Currently before the Court is Defendants' motion to dismiss *pro se* Plaintiff's complaint in which he asserts claims under 42 U.S.C. §1983 for constitutional violations against them. For the reasons stated below, the Court will grant the motion in part and deny it in part, as well as provide Plaintiff with leave to file an amended complaint.

## I.    BACKGROUND

*Pro se* Plaintiff Daniel S. Leppien ("Leppien"), a convicted state inmate, commenced this action by filing a complaint on October 16, 2023.[1] (Doc. 1.)

---

[1] Although the Clerk of Court did not docket the complaint until October 26, 2023, Leppien indicated that he placed it in the prison mail system for mailing on October 16, 2023. (Doc. 1 at 7.) Pursuant to the federal prisoner mailbox rule, the Court deems the complaint to be filed as of October 16, 2023. *See Houston v. Lack*, 487 U.S. 266, 276 (1988) (concluding that prisoner's submission is deemed filed "at the time [the prisoner] delivered it to the prison authorities for forwarding to the court clerk").

Leppien named as Defendants Laurel Harry ("Harry"), the Secretary of the Commonwealth of Pennsylvania Department of Corrections ("DOC"); M. Gourley ("Gourley"), the Superintendent at Pennsylvania State Correctional Institution Camp Hill ("SCI Camp Hill"); A. Davidson ("Davidson"), a Unit Manager at SCI Camp Hill; M. Wright ("Wright"), a corrections officer at SCI Camp Hill; and Lance R. Ossman ("Ossman"), an inmate at SCI Camp Hill. (*Id.* at 1, 2–3; Doc. 1-1 at 1–2.)[2] Leppien's allegations primarily relate to actions by Ossman, Wright, and Davidson during a period where he was incarcerated in a Residential Treatment Unit ("RTU") at SCI Camp Hill. (*Id.* ¶25.)

The Court starts with Leppien's allegations against Ossman. On July 24, 2022, Leppien was in a dayroom in the RTU when Ossman attacked him. (Doc. 1-1 ¶10.) While Leppien was seated at a table, Ossman grabbed him and pulled him backwards over the table by his shirt. (*Id.*) While doing so, Ossman stated, "[L]isten to me you one[-]eyed freak, I am going to stab out

---

[2] In filing his complaint, Leppien filled out the form for civil rights complaints by *pro se* prisoners (Doc. 1) and submitted a typewritten complaint (Doc. 1-1). Due to the difficulty the Court had with reading Leppien's handwriting on the form complaint, the Court mostly relies on the typewritten complaint in ascertaining Leppien's factual allegations and causes of action in this case.

your only good eye." (*Id.*) Two (2) corrections officers intervened in the assault, returned Ossman to his cell, and "locked him down for the day." (*Id.*)

Following this assault, Leppien communicated to non-party Unit Manager "Mr. Stracco," that he wanted a "separation put in" against Ossman because he felt Ossman had assaulted him, and he did not want Ossman on the same block as him anymore. (*Id.* ¶¶12, 14.) Mr. Stracco told Leppien that he did not consider what Ossman did to be an assault, and he refused to place a separation order as Leppien had requested. (*Id.* ¶12.)

On August 5, 2022, Mr. Stracco called Leppien into his office and told him to sign off on a grievance Leppien had filed relating to Ossman's attack, which was No. 990895. (*Id.* ¶14.) Mr. Stracco threatened Leppien to sign off on the document, but Leppien refused to do so. (*Id.*) Leppien avers that he received a denial of grievance No. 990895 on August 8, 2022. (*Id.* ¶15.)

On January 7, 2023, Leppien was once again sitting at a table in the dayroom when he encountered Ossman. (*Id.* ¶16.) Ossman approached the table and started shouting "nasty obscenities" at Leppien. (*Id.*) Ossman also grabbed a book out of Leppien's hand and stated, "Get the fuck away from the book and the table." (*Id.*) Ossman threaten to "fuck [Leppien] good" if he did not leave. (*Id.*) Leppien left the table and returned to his cell. (*Id.*)

Ten (10) days later, Leppien submitted a grievance (No. 1017504) under the Prison Rape Elimination Act ("PREA") against Ossman. (*Id.*) Because he did not receive a response to the grievance, Leppien contacted SCI Camp Hill's abuse hotline on January 19, 2023. (*Id.*) The following day, SCI Camp Hill's security team called Leppien to their office. (*Id.*) Leppien told them that Ossman "was abusing him . . . and told explicit sexual ineundos [sic] about what Ossman wanted to do to [him]." (*Id.*) Leppien later returned to his cell, and security spoke to another inmate, Robert J. Ferraro, who was at the table with Leppien when Ossman attacked him on July 24, 2022, to get information about the altercation. (*Id.*)

On January 20, 2023, Leppien submitted another grievance pertaining to Ossman in which he complained about Ossman retaliating against him. (*Id.* ¶17.) Specifically, Leppien indicated that Ossman was seeking other inmates to hit Leppien and informing them that Leppien was a child molester. (*Id.*)

Another incident with Ossman occurred on July 6, 2023, when Leppien was trying to use the phone to call his family. (*Id.* ¶18.) While Leppien was on the phone, Ossman approached him and began screaming obscenities at him. (*Id.*) Although Leppien told Ossman that he was on the phone, Ossman shoved Leppien and then hung up his phone. (*Id.*) Leppien

attempted to walk away, only to have Ossman block him and tell him, "I'm going to stab out your good eye," "I'm going to fuck you because of your long hair," and "there is nothing anyone is going to do about it." (*Id.*; *see id.* ¶21 (alleging that "Ossman went up to him and pushed him up against the wall and told [him] that he was going to stab his good eye out and rape him")). Leppien was able to get away, but Ossman followed him until Leppien reached his cell. (*Id.* ¶¶18, 21.) Upon returning to his cell, Leppien filled out a grievance because "Sgt. Blaise" did not protect him. (*Id.* ¶19.)

Before completing the grievance, Ossman opened Leppien's cell door and said that he "should come in there and fuck [him] and let [him] bleed out all over the floor." (*Id.* ¶¶19, 21.) Then another inmate, Rodriguez, opened the cell door and told Leppien that he was "going to come in there and beat the shit out of [him]." (*Id.* ¶19.) Leppien's cellmate, Ramon Jusino, Jr., told Ossman and Rodriguez to close the door. (*Id.*) Leppien avers that this type of incident with Ossman and Rodriguez happened twice that day. (*Id.*)

Leppien later finished the grievance. (*Id.*) In the grievance, Leppien stated that he wanted security to view the camera footage so they could see that Ossman had assaulted him. (*Id.*) The following day, a lieutenant from security along with three (3) corrections officers appeared on the cell block, handcuffed Ossman, "videotaped him," and transported him to the

Disciplinary Treatment Unit ("DTU"). (*Id.*) In addition, they handcuffed Rodriguez and transported him to the DTU. (*Id.*) Both inmates were sent to the DTU based on their assault of Leppien and terroristic threats toward him. (*Id.* ¶¶19, 23.) At some point on this same date, Leppien called the abuse hotline at the prison. (*Id.* ¶22.)

As for Leppien's allegations against Wright, Leppien generally alleges that she abused him. (*Id.* ¶¶24–31.) Leppien avers that Wright has refused to allow him to go to the yard on many occasions. (*Id.* ¶24.) Leppien asserts that one (1) of those occasions occurred on May 10, 2023, when Wright refused to allow him to go to the yard after he had returned to the cell block from the law library. (*Id.*)

Leppien complains about another instance involving Wright's abusive conduct toward him, which occurred on the morning of May 29, 2023. (*Id.* ¶25.) At that time, Leppien and a Peer Educator, someone who "help[s] and assist[s inmates] in personal matters of law, . . . help[s] write grievances and even . . . help[s inmates] write to their families," were sitting in the dayroom on the cell block. (*Id.*) The Peer Educator was assisting Leppien with writing and filing grievances against Wright because of the "abuse and targetting [sic]" Leppien was receiving from her. (*Id.*) At some point while Leppien and

the peer educator were working together, Wright and another corrections officer "screamed at [them] to take it into [their] cells." (*Id.*)

Wright continued with this abusive conduct toward Leppien despite being aware that Leppien has mental health issues. (*Id.* ¶26.) Wright would tell other inmates to hit Leppien because of the charges against him and would tell the other inmates why Leppien is incarcerated. (*Id.*) Although Leppien reported Wright's conduct toward him to the Psychiatric Support Office, an employee there told him that "Wight [sic] is who she is and there is nothing he can do about it." (*Id.*) Leppien also submitted a grievance about Wright's conduct and a report to "OSII," "a branch at Central Office for abuse of inmates." (*Id.* ¶¶26, 27.)

On June 14, 2023, Leppien was preparing to leave the cell block to use the law library. (*Id.* ¶28.) Instead of giving him a pass to go, Wright refused to allow him to leave the cell block. (*Id.*) She also told another inmate to "punch out" Leppien and, if he did, she would "take care of him." (*Id.*)

Then, on July 10, 2023, another inmate approached Leppien while Leppien was in the yard. (*Id.* ¶29.) This inmate told Leppien that he had been in the psychiatrist's office the day prior with Wright. (*Id.*) While there, Wright showed Leppien's "case on the computer" to this inmate. (*Id.*) Leppien submitted a grievance about this, and it appears that Davidson informed

Leppien that she reviewed video of the psychiatrist's office on the date in question and did not see Wright enter the office with the other inmate. (*Id.*) Leppien claims that Davidson covered up Wright's abuse. (*Id.*)

Not only was Davidson covering up Wright's abuse, but Leppien alleges that she was abusing him as well. (*Id.* ¶32.) In late May 2023, Leppien received the resident of the week award. (*Id.*) Yet, approximately five (5) days later, Davidson removed Leppien from his Peer Educator position. (*Id.*) Davidson told Leppien that she removed him from the position because he "had a poor job performance record with all the sergeant's reports on" the cell block. (*Id.*) Leppien asserts that this reason was fabricated and alleges that the reason why he was removed from the position was because he was filing grievances against Wright. (*Id.*)

Later in May 2023, Davidson refused to pay Leppien for eighty (80) hours that he worked as a Muralist. (*Id.* ¶33.) Although the prior unit manager had assigned Leppien to the payroll as a Muralist, Davidson stated that he was never a Muralist on the cell block. (*Id.*) Leppien filed a grievance relating to not being paid, but Davidson refused to "check into this matter" and continued to refuse to pay him. (*Id.*)

In addition to these allegations against Ossman, Wright, and Davidson, Leppien indicates that he wants to "sue . . . the [DC-]ADM 804 policy for

grievances." (*Id.* ¶34.) He claims that each time he sends a grievance appeal for final review with the DOC, his appeals are "turn[ed] down." (*Id.*) He also points out that there are times when the grievance coordinator fails to timely respond to a grievance, which should result in the grievance being approved. (*Id.*) However, instead of being approved, his grievances are denied despite the untimely responses. (*Id.*) Based on these issues, Leppien claims that "[t]his abuse on a 'D code' mental health inmate is unconstitutional," and he avers that the grievance system "needs to be revamped." (*Id.*)

Overall, Leppien alleges that he "was abused, retaliated against, targeted[,] and had all of his constitutionality taken away, which violated his 5th, 8th, and 14th Amendment right [sic]." (*Id.*) He "feels [that] $2,000,000 should be awarded in his favor." (*Id.*) He also requests that Defendants be enjoined from retaliating against him and assaulting him. (Doc. 1 at 5.)

When he filed his complaint, Leppien did not remit the filing fee or apply for leave to proceed *in forma pauperis*. As such, an Administrative Order issued on October 26, 2023, requiring Leppien to either remit the fee or seek leave to proceed *in forma pauperis* in thirty (30) days or risk dismissal of this action. (Doc. 4.) Leppien timely remitted the filing fee on November 17, 2023. (Doc. 6.)

On November 29, 2023, the Court entered an Order which treated the complaint as asserting claims for constitutional violations under 42 U.S.C. §1983 and, therefore, dismissed Leppien's claims against Ossman because there were no allegations showing that Ossman acted under color of state law for purposes of Section 1983 liability. (Doc. 7 at 4 & n.1.) In addition, the Court directed that the Clerk of Court send waiver of service forms to the remaining Defendants. (*Id.* at 1.)

Defendants Harry, Gourley, Davidson, and Wright waived service (Doc. 10), and they filed a motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) on January 29, 2024 (Doc. 11.) Before Defendants filed a brief in support of their motion, Leppien filed a "Motion to Alter the Complaint and Judgement [sic] Under Fed.R.Civil.proc.Rule [sic] 59(E) [sic]," which the Clerk of Court docketed on February 27, 2024. (Doc. 14.) In this motion, Leppien appeared to ask the Court to treat the motion as an amended complaint and allow him to add allegations about events that have transpired since he filed his original complaint and add a new defendant to the case. (*Id.* at ¶¶3, 5–9.)

Defendants initially treated Leppien's motion as an amended complaint and, as such, they filed a motion to dismiss the amended complaint on March 4, 2024. (Doc. 17.) On March 15, 2024, Defendants filed a motion for an

extension of time to file a brief in support of their motion to dismiss. (Doc. 18.). Then, on April 17, 2024, Defendants filed several documents, including, a motion to withdraw their motion to dismiss the amended complaint, a motion to partially dismiss the amended complaint, a motion to exceed the page limitations set by Local Rule 7.8(b)(3), and a brief in support of their motion to partially dismiss the amended complaint. (Docs. 20–23.)

Approximately a week later, Leppien filed a motion to compel discovery. (Doc. 24). On July 19, 2024, Leppien filed "Rule 31(B)(c)(2) Depositions by written [sic] Questions," which appears to have been intended for Defendants. (Doc. 25.)

On August 29, 2024, the Court, in the interests of judicial efficiency and economy, entered an Order which, *inter alia*, (1) granted Leppien leave to file an amended complaint by September 27, 2024, (2) denied Leppien's motion to compel discovery as premature, (3) dismissed Defendants' motions to dismiss Leppien's original complaint and purported amended complaint without prejudice, and (4) directed the Clerk of Court to strike Leppien's interrogatories from the docket. (Doc. 26.) The Court also instructed the parties that if Leppien did not file an amended complaint by September 27, 2024, the case would proceed on his original complaint, and Defendants could file an appropriate response to the original complaint. (*Id.*

¶10.) Leppien did not file an amended complaint, and Defendants filed the instant motion to dismiss the original complaint and a brief in support of the motion. (Docs. 27, 29.) Leppien has not filed a response in opposition to the motion, and the time for him to do so has long passed. Therefore, the motion to dismiss is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Motions to Dismiss Under Rule 12(b)(6)

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). Thus, a complaint that contains only "labels and conclusions," or a "formulaic recitation of the elements of a cause of action" is insufficient. *Id.*

A defendant may move to dismiss a complaint "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. Facial plausibility is achieved "when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility does not require probability but "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "merely consistent with" liability do not satisfy this standard. *Id.*

While the Court at this stage accepts the complaint's factual allegations as true, the Court does not do so to a plaintiff's legal conclusions. *See id.* ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). In addition, "[d]etermining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

This federal pleading standard requires district courts to conduct the following analysis when addressing a motion to dismiss a complaint:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to show such an entitlement with its facts.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (internal citations and quotations omitted).

*Pro se* filings must be construed "liberally." *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021). That means that the Court should "remain flexible," and "apply the relevant legal principle even when the complaint has failed to name it." *Id.* It does not mean, however, that *pro se* litigants may "flout procedural rules—they must abide by the same rules that apply to all other litigants." *Id.* Thus, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

### B. The Court's Continued Screening Obligation Under 28 U.S.C. §1915(e)(2)(B)

Because the Court previously granted Leppien leave to proceed *in forma pauperis*, the Court has a continuing obligation to examine whether his complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or asserts a claim against a defendant immune from monetary relief. *See* 28 U.S.C. §1915(e)(2)(B)(i)–(iii) (providing that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case **at any time** if the court determines that-- . . . (B) the action or appeal—(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief" (emphasis added)). The standard for dismissing a complaint for failure to state a claim pursuant to

Section 1915(e)(2)(B)(ii) is identical to the legal standard used when ruling on motions to dismiss under Rule 12(b)(6). *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Rule 12(b)(6) standard to dismissal for failure to state claim under section 1915(e)(2)(B)). Therefore, as explained above, to survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Additionally, as with considering Rule 12(b)(6) motions to dismiss, the court must liberally construe the allegations set forth in a *pro se* plaintiff's complaint when screening it under Section 1915(e)(2)(B)(ii). *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) ("At this early stage of the litigation, we accept the facts alleged [in the *pro se*] complaint as true, draw all reasonable inferences in [the *pro se* plaintiff's] favor, and ask only whether that complaint, liberally construed, . . . contains facts sufficient to state a plausible . . . claim." (citation, internal quotation marks, and all original alterations omitted)); *see also Vogt*, 8 F.4th at 185 ("We construe Vogt's *pro se* filings liberally. This means we remain flexible, especially 'when dealing with imprisoned *pro se* litigants' like Vogt." (internal citations omitted) (quoting *Mala*, 704 F.3d at 244–45 )).

### C.    Section 1983

Section 1983 is the statutory vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. *See* 42 U.S.C. §1983. This statute states in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution of laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

*Id.* "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284–85 (2002)). "To state a claim under §1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

## III.    DISCUSSION

### A.    Defendants' Motion to Dismiss the Complaint

In their motion to dismiss, Defendants raise several challenges to Leppien's complaint. First, they argue that Leppien's claims against Harry

- 16 -

and Gourley should be dismissed because he failed to allege that they were personally involved in any constitutional violation. (Doc. 29 at 14–15.) Second, they contend that the Court should dismiss any claims for Fifth Amendment violations against them because they are state officials. (*Id.* at 15–16.) Third, they assert that Leppien's claims fall under the First and Eighth Amendments and, as such, the Court should dismiss his Fourteenth Amendment claims pursuant to the "explicit source rule." (*Id.* at 16–17.) Fourth, they argue that Leppien failed to allege a plausible Eighth Amendment conditions-of-confinement claim. (*Id.* at 17–23.) Fifth, they contend that Leppien has failed to allege a plausible First Amendment retaliation claim. (*Id.* at 23–25.) Sixth, and finally, they assert that the Eleventh Amendment and the Prisoner Litigation Reform Act, 42 U.S.C. §1997e ("PLRA") bars Leppien's Section 1983 official-capacity claims against them. (*Id.* at 25–27.) The Court will address each of these contentions in turn, although not in the same order Defendants presented them.

### 1.    Section 1983 Fifth Amendment Claims

Defendants argue that the Court should dismiss Leppien's Section 1983 Fifth Amendment due process claims against them because it is inapplicable to state officials. (Doc. 29 at 15–16.) The Court agrees.

Leppien purports to assert Fifth Amendment due process claims against Defendants. (Doc. 1 at 5.) The Fifth Amendment, however, "restricts the actions of federal officials, not state actors." *Highhouse v. Wayne Highlands Sch. Dist.*, 205 F. Supp. 3d 639, 648 (M.D. Pa. 2016) (citing *Nguyen v. U.S. Cath. Conf.*, 719 F.2d 52, 54 (3d Cir. 1983)). Because Plaintiff has sued only state officials, he has not pleaded an actionable Fifth Amendment due process claim against them. Accordingly, the Court will dismiss Leppien's Section 1983 Fifth Amendment due process claims against Defendants.

### 2.    Section 1983 Official-Capacity Claims

Defendants move to have the Court dismiss Leppien's Section 1983 official-capacity claims against them because the Eleventh Amendment bars these claims. (*Id.* at 25–26.) They also contend that Leppien fails to request prospective injunctive relief against them, and they are not "persons" amenable to suit under Section 1983. (*Id.* at 25.) The Court concurs in part and disagrees in part.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of

another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. This Amendment

> has been interpreted to render states—and, by extension, state agencies and departments and officials when the state is the real party in interest—generally immune from suit by private parties in federal court. Indeed, it has been recognized for over two hundred years that a state's immunity from suit in federal court is a fundamental principle of our constitutional structure that preserves, as intended by the Framers, the respect and dignity of the states and protects the ability of the states "to govern in accordance with the will of their citizens."

*Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002) (quoting *Alden v. Maine*, 527 U.S. 706, 751 (1999)). Eleventh Amendment immunity extends to all state agencies, departments, and entities "having no existence apart from the state." *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981) (citation omitted). As such, the DOC, as an agency of the Commonwealth of Pennsylvania, is entitled to the Commonwealth's Eleventh Amendment immunity. *See* 71 P.S. §61(a) ("The executive and administrative work of this Commonwealth shall be performed by the . . . Department of Corrections . . . ."); *Lavia v. Pa., Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (stating that "[b]ecause the Commonwealth of Pennsylvania's Department of Corrections is a part of the executive department of the Commonwealth, it shares in the Commonwealth's Eleventh Amendment immunity"); *see also Downey v. Pa. Dep't of Corr.*, 968

F.3d 299, 310 (3d Cir. 2020) (explaining that "state sovereign immunity prohibit[ed]" plaintiff's Section 1983 claims against the DOC).

In this case, Defendants are state officials for purposes of Section 1983 because they work for the DOC. A suit for monetary damages brought against a state official in their official capacity "is not a suit against that official but rather is a suit against that official's office. As such, it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted); *see also Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S 658, 690 n.55 (1978))). Thus, Leppien's official-capacity claims for monetary damages against Defendants constitute claims against the Commonwealth, which is immune from such claims under the Eleventh Amendment. *See Will*, 491 U.S. at 66, 70–71.

There are, however, three (3) narrow exceptions to Eleventh Amendment immunity potentially applicable to Leppien's official-capacity claims for monetary damages. The first two (2) exceptions are (1) if the state waives its immunity or (2) Congress exercised its power under Section 5 of the Fourteenth Amendment to override that immunity. *See Graham*, 473 U.S.

at 169 ("[A]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court."). Neither of these exceptions apply here because the Commonwealth of Pennsylvania has not waived its Eleventh Amendment immunity. *See* 42 Pa. C.S. §8521(b) ("Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States."); *Lavia*, 224 F.3d at 195 (explaining that Pennsylvania has not waived its Eleventh Amendment immunity). In addition, Congress did not intend to abrogate a state's Eleventh Amendment immunity by enacting Section 1983. *See Quern v. Jordan*, 440 U.S. 332, 344–45 (1979) (stating that "§1983 does not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States; nor does it have a history which focuses directly on the question of state liability and which shows that Congress considered and firmly decided to abrogate the Eleventh Amendment immunity of the States").

As for the third exception, the Eleventh Amendment does not bar a "suit[] against state officers for prospective relief to end an ongoing violation of federal law." *MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 503 (3d Cir. 2001). Here, despite Defendants' assertion to the contrary, Leppien has

- 21 -

requested prospective injunctive relief in the nature of an injunction prohibiting any further retaliation or assaults against him. (Doc. 1 at 5.) Therefore, although the Eleventh Amendment bars Leppien's Section 1983 official-capacity claims for monetary damages against Defendants, it does not bar Leppien's official-capacity claims against them for prospective injunctive relief.

### 3.   Section 1983 Claims Against Harry and Gourley

Defendants argue that the Court should dismiss Leppien's Section 1983 claims against Harry and Gourley because he did not allege their personal involvement in any constitutional violation in his complaint. (Doc. 29 at 14–15.) The Court agrees.

Leppien's allegations in his complaint relating to Gourley and Harry consist only of their job descriptions. (Doc. 1-1 at 1.) He avers that Harry is the "head" of the DOC and is "legally responsible for the overall operation of the [DOC] and each institution under it's [sic] jurisdiction, including SCI Camp Hill . . . ." (*Id.*) As for Gourley, Leppien alleges that he is the Superintendent of SCI Camp Hill and is "legally responsible for the overall operation of SCI[]Camp Hill and for the welfare of all the inmates in that prison." (*Id.*)

The Court construes these allegations as Leppien's attempt to assert Section 1983 claims against Gourley and Harry because they allegedly

- 22 -

supervise employees at SCI Camp Hill and the DOC, respectively. If so, these claims are implausible because liability under Section 1983 cannot be predicated on respondeat superior. *See Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015) ("[Plaintiff] cannot predicate liability on her §1983 claims on a respondeat superior basis." (emphasis omitted) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988))); *Robinson v. Delbalso*, No. 22-2378, 2022 WL 17248100, at *2 (3d Cir. Nov. 28, 2022) ("We agree with the District Court that Robinson's second amended complaint did not state a plausible claim for relief. First, he failed to allege the defendants' personal involvement, and he cannot predicate liability on his §1983 claims on a respondeat superior basis." (internal citations omitted)). Instead, if Leppien seeks to hold these Defendants liable for unconstitutional acts by their alleged subordinates, his allegations must satisfy one of two theories of supervisory liability: First, "[i]ndividual defendants who are policymakers may be liable under §1983 if it is shown that such defendants, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm[;]" and second, "a supervisor may be personally liable under §1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge,

had knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (citation omitted); *see Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014) (explaining requirements for supervisory liability in Section 1983 claim and describing "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates"), *rev'd on other grounds sub nom.*, *Taylor v. Barkes*, 575 U.S. 822 (2015).

To allege a plausible claim for supervisory liability under the first theory—the policy-and-practice strand of supervisory liability—a plaintiff must

> (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure. Put another way, the inmate must identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the inmate's risk of injury and must establish a link between the supervisor, the act, and the injury.

*Chavarriaga*, 806 F.3d at 227 (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001)). For the second theory of supervisory liability—participating in, directing others to, or knowledge and acquiescence of constitutional violation—generalized allegations that a supervisory

defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (unpublished) ("Saisi asserted that some defendants were in charge of agencies that allowed this to happen, and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of [their] position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005))); *Zigler v. Warren*, No. 21-cv-19474, 2022 WL 903383, at *2 (D.N.J. Mar. 28, 2022) ("In simpler terms, a supervisor is not liable for the unconstitutional conduct of his employees solely because he is a supervisor."). Additionally, "[a]lthough a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." *Chavarriaga*, 806 F.3d at 222 (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1194 (3d Cir. 1995); *Rode*, 845 F.2d at 1201 n.6).

Here, Leppien's allegations do not satisfy the second theory of supervisory liability because there are no allegations that Harry or Gourley participated in violating his rights, directed Wright or Davidson to violate them, or, despite knowing what was happening to Leppien at SCI Camp Hill,

acquiesced in any violation. In addition, Leppien's allegations do not satisfy the first theory of supervisory liability because he has not identified a policy, practice, or custom either Harry or Gourley established that led to the violation of his constitutional rights. Accordingly, the Court will dismiss Leppien's Section 1983 claims against Harry and Gourley due to his failure to state a plausible claim for relief against them.

### 4.    The PLRA

Defendants contend that the Court should dismiss Leppien's claims for compensatory damages under the PLRA because he alleges that he suffered only emotional injuries due to Wright and Davidson's constitutional violations. The Court agrees.

Pursuant to the PLRA, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in [18 U.S.C. §2246])." 28 U.S.C. §1997e(e). To satisfy the PLRA, the plaintiff-prisoner must allege a "less-than-significant-but-more-than-de minimis physical injury." *Mitchell v. Horn*, 318 F.3d 523, 534 (3d Cir. 2003). If a plaintiff fails to allege a sufficient physical injury in the context of an alleged constitutional violation, they may not seek an award of compensatory damages; however, they may still seek

nominal or punitive damages as well as injunctive or declaratory relief. *See id.* at 533; *see also Allah v. Al-Hafeez*, 226 F.3d 247, 251–52 (3d Cir. 2000) (concluding that Section 1997e(e) does not bar plaintiff from seeking award of nominal or punitive damages for alleged constitutional violation).

Here, Leppien includes no allegations in his complaint that he was physically injured (including during his altercations with Ossman). He claims to have been harassed, threatened, and humiliated by Wright or Davidson, but those allegations are insufficient to satisfy Section 1997e(e)'s physical injury requirement. Therefore, the Court will dismiss Leppien's Section 1983 claims for compensatory damages.

### 5. The "More-Specific Provision Rule"

Defendants argue that the Court should dismiss Leppien's Fourteenth Amendment due process claims under the "more-specific provision rule" because his allegations constitute Eighth Amendment and First Amendment claims. (Doc. 29 at 16–17.) The Court agrees.

Under the "more-specific-provision rule," "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 260 (3d Cir. 2010) (quoting

*United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)). In this case, when liberally construing the complaint due to Leppien's *pro se* status, the Court understands him to be asserting not only a First Amendment retaliation claim against Davidson, but also claims relating to either the conditions of his confinement or the failure to protect him, which are both Eighth Amendment violations. *See Smith v. McGinley*, No. 3:22-cv-1382, 2024 WL 2725041, at *4 (M.D. Pa. May 28, 2024) ("There are several types of Eighth Amendment claims, including claims alleging: denial of, or inadequate access to, medical care; exposure to adverse conditions of confinement; the use of excessive force; and failure to protect from assaults by other inmates."), *aff'd*, No. 24-2173, 2024 WL 4589233 (3d Cir. Oct. 28, 2024). Accordingly, the Court will dismiss Leppien's Section 1983 Fourteenth Amendment due process claims because these claims appear to be covered by the First and Eighth Amendments.

### 6. Eighth Amendment Claims

Defendants move to have the Court dismiss Leppien's Eighth Amendment claims in their entirety for a few reasons. (Doc. 29 at 17–23.) First, they argue that Leppien has failed to include sufficient allegations that they failed to protect him from Ossman. (*Id.* at 18–20.) They point to Leppien's grievances attached to his complaint to show that they "addressed

each incident involving Ossman and each incident was followed by prompt investigation. When the investigation indicated that action was necessary to prevent Ossman from assaulting [Leppien, they] took immediate steps to separate Ossman from [Leppien]." (*Id.* at 18.) They also note that Leppien essentially sporadically complained of Ossman's conduct over an entire year and, during that time, they were unaware that Leppien was at a substantial risk of harm. (*Id.* at 18–20.) Second, Defendants contend that Leppien has not plausibly alleged Eighth Amendment conditions-of-confinement claims because the loss of his job as a Peer Educator (or as Muralist) does not rise to an Eighth Amendment violation. (*Id.* at 21.) Finally, they argue that Leppien's allegations are contradicted by the documents relating to grievances he filed, which he has attached to his complaint. (*Id.* at 21–23.)

After liberally construing the complaint, the Court understands Leppien to be asserting Eighth Amendment failure-to-protect claims based on his interactions with Ossman and Wright's actions in informing other inmates about Leppien's charges as well as directing them to hit him. The Court also understands Leppien to be asserting Eighth Amendment conditions-of-confinement claims based on Wright and Davidson's conduct towards him. Based on this understanding, the Court will grant the motion as to his Eighth Amendment failure-to-protect claim pertaining to Ossman (albeit for a

different reason than argued by Defendants) and his conditions-of-confinement claims but deny it to the extent Defendants sought to dismiss his failure-to-protect claim against Wright pertaining to her comments about him to other inmates.

Preliminarily, the Court addresses a component of Defendants' arguments for dismissal of Leppien's Eighth Amendment claims, as well as his First Amendment claims, namely, their reliance on the grievance-related documents he attached to his complaint. The Court recognizes that "[t]o decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Court also recognizes that if a Plaintiff's "own exhibits contradict [their] allegations in the complaint, the exhibits control." *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 112 (3d Cir. 2018) (citations omitted). Nevertheless, considering Leppien's exhibits in the manner Defendants seek to have the Court consider them would permanently turn prisoner-plaintiffs' civil rights actions on their heads.

For instance, in arguing that Leppien has failed to state a plausible conditions-of-confinement claim, Defendants point to Leppien's exhibit H to his complaint, which consists of copies of his grievance about Wright denying

him access to use the yard as well as other documents relating to the grievance as Leppien pursued it through the DOC. *See* (Docs. 29 at 22; 1-9 at 1–5). Defendants argue that this exhibit contradicts Leppien's allegations because it "states that inmates are not permitted to access the yard except for at the start and at half time, and [Leppien] did not attempt to gain access to the yard at either of those times." (Doc. 29 at 22.) In arguing this purported contradiction, Defendants are relying on the information stated in the Initial Review Response to Leppien's grievance (Doc. 1-9 at 3) and the Facility Manager's response to Leppien's appeal from the denial of his grievance (*id.* at 5). Stated plainly, Defendants want the Court to accept the information stated in these responses as true.

Defendants do not cite to any authority stating that a district court may consider the substance of a prison's response to a grievance if that response happens to be attached to a complaint. Undoubtedly, this Court could consider the grievance-related documents at this stage if Defendants had moved to dismiss the complaint based on a failure to exhaust administrative remedies. *See Rinaldi v. United States*, 904 F.3d 257, 261 n.1 (3d Cir. 2018) (explaining that a court may consider "indisputably authentic documents related to [an inmate's] grievances" in deciding a motion to dismiss for failure to exhaust without needing to convert the motion into a motion for summary

- 31 -

judgment). However, doing so merely requires the Court to consider the documents themselves rather than requiring the Court to determine that the information contained within the documents is true. *See In re Island Indus., Inc.*, No. 23-5200, 2024 WL 869858, at *2 (6th Cir. Feb. 29, 2024) ("When entertaining a motion to dismiss, a court can consider documents attached to the complaint and may take judicial notice of documents from earlier proceedings 'only for the fact of the documents' existence, and not for the truth of the matters asserted therein.'" (quoting *Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005) (unpublished))); *In re Lehman Bros. Sec. and ERISA Litig.*, 903 F. Supp. 2d 152, 168–69 (S.D.N.Y. 2012) ("[A] document that is integral to a complaint in the sense that the plaintiff had actual notice of and relied upon it in framing the complaint, is properly considered, albeit not for the truth of the matters asserted, notwithstanding that it has not been attached to or incorporated by reference into the complaint" (citations omitted)); *see also Staehr v. Hartford Fin. Servs. Grp., Inc.* 547 F.3d 406, 425 (2d Cir. 2008) ("[I]t is proper to take judicial notice of the *fact* that press coverage, prior lawsuits, or regulatory filings contained certain information, without regard to the truth of their contents . . . ." (emphasis in original)). If the Court considered the response to the grievance to be true, the Court would be essentially finding Leppien's grievance to be

incredible while finding the prison official's response to the grievance credible, which would be outside the Court's authority when deciding a motion to dismiss. *See, e.g.*, *Hemingway v. Falor*, 200 F. App'x 86, 91 (3d Cir. 2006) (unpublished) (determining that district court's reliance on response to prisoner-plaintiff's grievance indicating responding party lacked authority concerning plaintiff's medical treatment to dismiss deliberate-indifference claim due to responding party's lack of authority over treatment was in error; however, error was ultimately determined to be harmless). Ultimately, this would result in any disputes between a prisoner-plaintiff's allegations and the information a prison official sets forth in a response to a grievance being decided in favor of the prison official, which is untenable. Therefore, although the Court has considered all documents Leppien attaches to his complaint in resolving Defendants' motion to dismiss, the Court will not follow Defendants' suggestion that the Court deem certain contents of those documents to be true.

Turning now to whether Leppien has failed to state plausible Eighth Amendment claims, the Court starts with his failure-to-protect claims. For a prisoner-plaintiff to plausibly allege an Eighth Amendment failure-to-protect claim they must allege that: (1) they were incarcerated under conditions posing a substantial risk of serious harm; and (2) the prison officials involved

had a sufficiently culpable state of mind. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Specifically, the inmate must allege facts showing that the prison official knew of and disregarded an excessive risk to inmate health or safety. *See Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997).

As indicated above, Leppien appears to have two (2) failure-to-protect claims: a claim relating to the failure to protect him from Ossman's assaults, and a claim relating to Wright's conduct. Regarding the first claim, while Defendants identify aspects of the documents attached to the complaint which could show that they did not know of or disregard an excessive risk to Leppien's health or safety, his claim fails for a different reason, namely, his failure to specifically allege that any named Defendant failed to protect him. There are no allegations in the amended complaint that tie Harry, Gourley, Wright, or Davidson to Leppien's allegations about Ossman. Leppien mentions other prison officials in the complaint and in his grievance documents, but those individuals are not named as defendants in this case. Accordingly, the Court will dismiss Leppien's failure-to-protect claims concerning Ossman due to the lack of allegations showing the personal involvement of any Defendant in failing to protect him from Ossman. *See Rode*, 845 F.2d at 1207 ("A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . .").

- 34 -

Concerning his second failure-to-protect claim, Defendants do not appear to have interpreted the complaint as containing such a claim because they did not mention it in their brief in support of their motion to dismiss. Nevertheless, because Leppien is proceeding *pro se*, this Court must "remain flexible," and "apply the relevant legal principle even when the complaint has failed to name it." *Vogt*, 8 F.4th at 185.

Leppien generally alleges that Wright told other inmates about his "charges," showed an inmate Leppien's "case" on the computer, and told inmates that he is a "child molester." (Doc. 1-1 ¶¶26–27, 29.) These allegations are sufficient to state a plausible failure-to-protect claim. *See Allam v. McGinley*, No. 1:20-cv-933, 2022 WL 993072, at *6 (M.D. Pa. Feb. 25, 2022) ("Similar to being labeled a snitch, labeling an inmate as a sex offender can endanger an inmate's safety. *See Hutchinson v. Smeal*, No. 1:11-CV-320, 2012 WL 1038657, at *2 (M.D. Pa. Mar. 27, 2012) (finding that inmates who are labeled as sex offenders are highly stigmatized and endangered in a prison setting); *see Moore v. Wetzel*, No. 14-CV-1709, 2015 WL 7163114, at *3 (W.D. Pa. Nov. 13, 2015) (finding that a substantial risk of serious harm is created for an inmate who is labeled a child molester)."), *report and recommendation adopted*, 2022 WL 987739 (M.D. Pa. Mar. 31, 2022). In addition, simply because Leppien has not alleged that he was

physically harmed by another inmate due to Wright's statements does not take away from the plausibility of this claim. *See Farmer*, 511 U.S. at 845 ("[A] subjective approach to deliberate indifference does not require a prisoner seeking a remedy for unsafe conditions to await a tragic event such as an actual assault before obtaining relief."). While Leppien may not be able to recover monetary damages due to the lack of any physical harm, the "fail[ure] to allege that physical harm has occurred . . . does not preclude him form seeking injunctive relief to prevent such an assault from occurring in the future." *Allam*, 2022 WL 993072, at *7. Therefore, Leppien may proceed with his Eighth Amendment failure-to-protect claim against Wright based on his allegations that she is telling other inmates that he is a child molester.

As for Leppien's possible conditions-of-confinement claims, the Court notes that the Eighth Amendment prohibits any punishment which violates civilized standards of humanity and decency. *See Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997) (citing *Young v. Quinlan*, 960 F.2d 351, 361 (3d Cir. 1992)). To succeed on a claim that the conditions of confinement were violative of a plaintiff's Eighth Amendment rights, "a plaintiff must demonstrate both that (1) [they have] been denied 'the minimal civilized measure of life's necessities,' and (2) that prison officials acted with

deliberate indifference to those conditions." *Whitney v. Wetzel*, 649 F. App'x 123, 127 (3d Cir. 2016) (unpublished) (citing *Farmer*, 511 U.S. at 833–34).

The first prong is objective. *Griffin*, 112 F.3d at 709. While prison conditions are often less than ideal, only extreme deprivations of life's basic necessities are sufficient to violate the Eighth Amendment's prohibition on cruel and unusual punishment. *Farmer*, 511 U.S. at 834 (1994). Prison officials have a duty to provide humane conditions of confinement, but the constitution does not mandate comfortable prisons. *See Carson v. Mulvihill*, 488 F. App'x 554, 560 (3d Cir. 2012) (unpublished). Indeed, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care and they must take "reasonable measures" to guarantee inmate safety from violence at the hands of other prisoners. *Farmer*, 511 U.S. at 832.

The second prong is subjective. A prison official cannot be found liable under the Eighth Amendment unless they act with deliberate indifference; that is: "unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837–38; *Hamilton*, 117 F.3d at 476. Deliberate indifference requires obduracy and wantonness that constitutes recklessness or a conscious disregard of a serious risk. *See*

*Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (citing *Farmer*, 511 U.S. at 842).

Here, the Court finds that Leppien has failed to plead a plausible conditions-of-confinement claim. In so finding, the Court focuses on Leppien's allegations against Wright and Davidson as Leppien did not allege the personal involvement of Harry or Gourley in any alleged constitutional violation. Leppien's allegations against Wright amount to her (1) refusing to allow him to go to the law library on one occasion, (2) refusing to allow him to go into the yard on multiple occasions, and (3) screaming at him and another inmate to go back into their cells on one occasion.[3] These allegations are insufficient to show that Leppien has been deprived of "[t]he minimal civilized measure of life's necessities." *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 373 (3d Cir. 2019). The only one of these allegations potentially applying to his conditions of confinement is his allegation that Wright denied him access to the yard on multiple occasions, which the Court interprets as an allegation that he was being denied exercise. However, "[t]he lack of exercise may rise to the level of an Eighth Amendment violation [only] 'in extreme and prolonged situations where movement is denied to the point

---

[3] His other allegations against Wright fall under his failure-to-protect claim against her.

that the inmate's health's is threatened." *Jordan v. Wetzel*, No. 16-cv-307, 2020 WL 410162, at *4 (W.D. Pa. Jan. 24, 2020) (quoting *Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996)). Leppien's allegations do not describe how often he was denied exercise or that he suffered any health consequences because of it. Therefore, the Court will dismiss Leppien's conditions-of-confinement claim against Wright.

Concerning Leppien's conditions-of-confinement claim against Davidson, he has also failed to plead a plausible claim for relief. His allegation about Davidson terminating him as a Peer Educator is insufficient. *See Watson v. Sec'y Pa. Dep't of Corr.*, 567 F. App'x 75, 78 (3d Cir. 2014) (unpublished) (affirming district court's dismissal of plaintiff's conditions-of-confinement claim "[b]ecause a prison job is not one of life's necessities"). Similarly, his allegation about Davidson refusing to pay him for a work as a Muralist is insufficient because he does not allege that he was unable to properly care for himself due to not being paid. Accordingly, the Court will also dismiss his conditions-of-confinement claim against Davidson.

### 7.   First Amendment Retaliation

Defendants contend that Leppien has failed to plead a plausible First Amendment claim "because there are insufficient averments to establish a causal connection" between any protected activity and an adverse action.

(Doc. 29 at 24.) They assert that (1) Leppien was never employed as a muralist and (2) his employment as a Peer Educator was terminated a day after a poor performance review. (*Id.* at 24–25.) In support of these assertions, they point out that Leppien's "inmate employment record does not state he is a Muralist, nor did he have an agreement stating he was employed as a Muralist." (*Id.* at 25.) Moreover, they indicate that inmates do not have the right to be assigned or continue to work in any specific work assignment per prison policy. (*Id.*) As discussed below, the Court will deny this part of Defendants' motion.

To plead a prima facie case of retaliation in violation of the First Amendment, a plaintiff must allege the following elements: "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006). "Although the elements of a First Amendment retaliation claim remain constant, the underlying concepts that they signify will vary with the setting— whether activity is 'protected' or an action is 'adverse' will depend on context . . . ." *Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999). The fact of incarceration and the valid penological objectives of deterrence of crime,

rehabilitation of prisoners, and institutional security justify limitations on the exercise of constitutional rights by inmates. *See Pell v. Procunier*, 417 U.S. 817, 822–23 (1974). Thus, a prison inmate "retains [only] those rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Id.* at 822.

In this case, Leppien has sufficiently alleged that he engaged in protected conduct insofar as he filed grievances against Wright. Additionally, Leppien has alleged that he suffered adverse action in response to his filing of grievances against Wright, namely, Davidson removing him from his job as a Peer Educator and refusing to pay him for his work as a Muralist.

Defendants' arguments about Leppien not sufficiently pleading adverse action are unpersuasive in two (2) respects. First, regardless of the prison's policy about inmates' rights to their prison jobs, "the termination of prison employment constitutes adverse action sufficient to deter the exercise of First Amendment rights." *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017) (citing *Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991)); *see also Williams*, 926 F.2d at 998 ("[A prisoner] has no right to a job . . . [but] prison officials cannot punish [him for] exercising his first amendment rights by denying him certain job assignments or transferring him from one job to another" (alterations in original)). Second, the Court cannot consider prison

officials' responses to Leppien's grievances for the truth of the matters contained in those responses. By identifying those responses and stating that they demonstrate that there were reasons unrelated to Leppien's protected activity to terminate his employment and to not pay him, Defendants are essentially putting forward their "same decision defense" at the motion to dismiss stage. *See Calloway v. Bauman*, No. 3:20-cv-2337, 2022 WL 4357468, at *8 (M.D. Pa. Sept. 20, 2022) ("If a prisoner establishes a prima facie case of retaliation, the burden shifts to prison officials to show, by a preponderance of the evidence, that 'they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest.' *Rauser*[ *v. Horn*, 241 F.3d 330, 334 (3d Cir. 2001)] 'This is often referred to as the "same decision defense."' *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016). If the prison officials can make this showing, it defeats the retaliation claim. *See Carter v. McGrady*, 292 F.3d 152, 159 (3d Cir. 2002)."). Therefore, although Defendants appear to have identified a legitimate reason unrelated to Leppien's engagement in protected activity for the loss of his job (as well as not paying him, *see* (Doc. 1-16)), it is improper for this Court to consider those reasons in ruling on their

motion to dismiss. Accordingly, Defendants' motion to dismiss Leppien's First Amendment retaliation claim against Davidson is denied.[4]

## B.    Leppien's Challenge to the DOC's Grievance System

Leppien indicates in his complaint that he wants to challenge the DOC's grievance system, DC-804, because he believes it does not work and needs to be "revamped." (Doc. 1-1 ¶ 34.) The Court has screened this claim under Section 1915(e)(2)(B) and will dismiss it for the failure to state a plausible claim.

Prisoners do not have a constitutionally protected interest in a grievance system. *See Rieco v. Scire*, 672 F. App'x 192, 193 (3d Cir. 2017) (affirming district court's dismissal of prisoner-plaintiff's due process claim relating to grievance system "because inmates do not have a constitutionally-protected right to a prison grievance system"); *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) ("The courts of appeals that have confronted the issue are in agreement that the existence of a prison

---

[4] Despite arguing that Leppien failed to show a causal connection, Defendants did not focus on the timing between his alleged activity and any adverse action. *See Mearin v. Greene*, 555 F. App'x 156, 158–59 (3d Cir. 2014) (unpublished) (explaining that to show a causal connection, a plaintiff must show either a suggestive temporal proximity between the protected activity and the allegedly retaliatory action or a pattern of antagonism coupled with timing (citing *Lauren W. ex. rel. Jean W. v. Deflaminis*, 480 F.3d 259, 267 (3d Cir. 2007))). As such, the Court has not addressed it here.

grievance procedure confers no liberty interest on a prisoner."). Thus, "[v]iolations of grievance procedures do not give rise to a cognizable claim under [Section 1983, and] . . . any allegations of improprieties in the handling of [a plaintiff's] grievances do not state a cognizable claim under [Section] 1983." *Bailey v. Rozum*, No. 13-cv-78, 2015 WL 14094690, at *2 (W.D. Pa. May 6, 2015), *report and recommendation adopted sub nom.*, 2015 WL 14094689 (W.D. Pa. June 8, 2015).

## C.    Leave to Amend

Having determined that some of Leppien's claims against Defendants in his complaint are subject to dismissal, the Court must decide whether to grant him leave to file an amended complaint. Although district courts should generally give leave to amend, they may dismiss a complaint with prejudice where leave to amend would be inequitable or futile. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007) ("[I]n civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) ("When a plaintiff does *not* seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that [they have] leave to amend within a

set period of time, unless amendment would be inequitable or futile."). "In determining whether [amendment] would be futile, the district court applies the same standard of legal sufficiency as [it] applies under Fed. R. Civ. P. 12(b)(6)." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).

In this case, the Court finds that it would be futile for Leppien to amend his complaint as to his Section 1983 official-capacity claims for monetary damages, Fifth and Fourteenth Amendment due process claims, Eighth Amendment conditions-of-confinement claims against Wright and Davidson, and requests for compensatory damages.[5] On the other hand, the Court finds that Leppien should have the opportunity to amend his complaint relating to his Section 1983 claims against Gourley and Harry, as well as his Eighth Amendment failure-to-protect claim relating to Ossman.

## IV.  CONCLUSION

Based on the aforesaid, the Court will grant the motion to dismiss to the extent Defendants moved to dismiss Leppien's Fifth and Fourteenth

---

[5] Although amendment of Leppien's Section 1983 official-capacity claims is futile, they will be dismissed without prejudice. *See, e.g.*, *Merritts v. Richards*, 62 F.4th 764, 772 (3d Cir. 2023) (explaining that "Eleventh Amendment immunity is a threshold, nonmerits issue that does not entail any assumption by the court of substantive law-declaring power, and a dismissal on that basis, like dismissals for lack of jurisdiction, should normally be without prejudice" (internal citations and quotation marks omitted)).

Amendment due process claims, Section 1983 official-capacity claims for monetary damages, Section 1983 claims against Gourley and Harry, Eighth Amendment conditions-of-confinement claims, Eighth Amendment failure-to-protect claim relating to Ossman, and claims for compensatory damages. The Court will deny the motion to the extent Defendants sought dismissal of Leppien's First Amendment retaliation claim against Davidson. Additionally, pursuant to the Court's screening of the complaint under Section 1915(e)(2)(B), the Court will dismiss Leppien's Section 1983 claim pertaining to the DOC's grievance policy but allow him to proceed on an Eighth Amendment failure-to-protect claim for injunctive relief against Wright. The Court will grant Leppien leave to file an amended complaint as to his Section 1983 claims against Gourley and Harry as well as his Eighth Amendment failure-to-protect claim relating to Ossman. An appropriate Order follows.

_s/ Malachy E. Mannion_
**MALACHY E. MANNION**
**United States District Judge**

**DATE: February 18, 2025**
23-cv-1773-01

- 46 -