**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

DANIEL S. LEPPIEN,                          :

          **Plaintiff**              :        **CIVIL ACTION NO. 3:23-1773**

    v.                                   :            **(JUDGE MANNION)**

LAUREL HARRY, *et al.,*                     :

          **Defendants**            :

## <u>MEMORANDUM</u>

Currently before the Court are Defendants' motion to dismiss *pro se* Plaintiff Daniel S. Leppien ("Leppien")'s amended complaint under Federal Rule of Civil Procedure 12(b)(6) and their motion to dismiss this action for lack of prosecution under Federal Rule of Civil Procedure 41(b). Leppien did not file a response to either motion. For the reasons stated below, the Court will grant Defendants' Rule 41(b) motion to dismiss for lack of prosecution, dismiss Leppien's amended complaint with prejudice, deny Defendants' Rule 12(b)(6) motion to dismiss as moot, and direct the Clerk of Court to close this case.

## I.    BACKGROUND

Leppien, a convicted and sentenced state prisoner currently incarcerated at Pennsylvania State Correctional Institution Camp Hill ("SCI Camp Hill"), commenced this action by filing a complaint on October 16,

2023.[1] (Doc. 1.) Leppien named as Defendants Laurel Harry ("Harry"), the Secretary of the Commonwealth of Pennsylvania Department of Corrections ("DOC"); M. Gourley ("Gourley"), the Superintendent at SCI Camp Hill; A. Davidson ("Davidson"), a Unit Manager at SCI Camp Hill; M. Wright ("Wright"), a corrections officer at SCI Camp Hill; and Lance R. Ossman ("Ossman"), an inmate at SCI Camp Hill. (*Id.* at 1, 2–3; Doc. 1-1 at 1–2.)[2]

Leppien's allegations primarily related to actions by Ossman, Wright, and Davidson during a period where he was incarcerated in a Residential Treatment Unit ("RTU") at SCI Camp Hill. *See* (Doc. 1-1 ¶25). He alleged

---

[1] Although the Clerk of Court did not docket the complaint until October 26, 2023, Leppien indicated that he placed it in the prison mail system for mailing on October 16, 2023. (Doc. 1 at 7.) Pursuant to the federal prisoner mailbox rule, the Court deems the complaint to be filed as of October 16, 2023. *See Houston v. Lack*, 487 U.S. 266, 276 (1988) (concluding that prisoner's submission is deemed filed "at the time [the prisoner] delivered it to the prison authorities for forwarding to the court clerk").

Additionally, when he filed his complaint, Leppien did not remit the filing fee or apply for leave to proceed *in forma pauperis*. As such, an Administrative Order issued on October 26, 2023, requiring him to either remit the fee or seek leave to proceed *in forma pauperis* in thirty days or risk dismissal of this action. (Doc. 4.) In response, Leppien timely remitted the filing fee on November 17, 2023. (Doc. 6.)

[2] In filing his complaint, Leppien completed the form for civil rights complaints by *pro se* prisoners (Doc. 1) and submitted a typewritten complaint (Doc. 1-1). Due to the difficulty the Court had with reading Leppien's handwriting on the form complaint, the Court mostly relies on the typewritten complaint in ascertaining Leppien's factual allegations and causes of action asserted in his original complaint.

that Ossman threatened to assault him, solicited others to assault him, or personally assaulted him, on four separate dates between July 1, 2022, and July 6, 2023. *See* (*id.* ¶¶10–21). As for Wright and Davidson, Leppien generally alleged that they were abusive towards him on various occasions from May 2023 through mid-July 2023. *See* (*id.* ¶¶24–31.) In addition to these allegations against Ossman, Wright, and Davidson, Leppien indicated that he wanted to challenge the DOC's Inmate Grievance Policy, DC-ADM 804. *See* (*id.* ¶34). Overall, Leppien alleged that he "was abused, retaliated against, targeted[,] and had all of his constitutionality taken away, which violated his 5th, 8th, and 14th Amendment right [sic]." (*Id.*) He also "fe[lt that] $2,000,000 should be awarded in his favor," (*id.*), and he requested that Defendants be enjoined from retaliating against him and assaulting him. *See* (Doc. 1 at 5).

On November 29, 2023, the Court entered an Order which, *inter alia*, treated Leppien's complaint as asserting claims for constitutional violations under 42 U.S.C. §1983 and, therefore, dismissed Leppien's claims against Ossman because there were no factual allegations showing that Ossman, since he was another inmate, acted under color of state law for purposes of Section 1983 liability. *See* (Doc. 7 at 4 & n.1.) In addition, the Court directed that the Clerk of Court send waiver of service forms to the remaining

Defendants, Harry, Gourley, Davidson, and Wright (collectively, "Defendants"). *See* (*id.* at 1).

Defendants waived service (Doc. 10), and they filed a Rule 12(b)(6) motion to dismiss the complaint on January 29, 2024 (Doc. 11). Before Defendants filed a brief in support of their motion, Leppien filed a "Motion to Alter the Complaint and Judgement [sic] Under Fed.R.Civil.proc.Rule [sic] 59(E) [sic]," which the Clerk of Court docketed on February 27, 2024. (Doc. 14.) In this motion, Leppien appeared to ask the Court to treat the motion as an amended complaint and allow him to add allegations about events that transpired since he filed his original complaint as well as add a new defendant to the case. *See* (*id.* ¶¶3, 5–9.)

Defendants initially treated Leppien's motion as an amended complaint and, as such, they filed a motion to dismiss the amended complaint on March 4, 2024. (Doc. 17.) On March 15, 2024, Defendants filed a motion for an extension of time to file a brief in support of their motion to dismiss. (Doc. 18.) On April 17, 2024, Defendants filed several documents, including a motion to withdraw their motion to dismiss the amended complaint, a motion to partially dismiss the amended complaint, a motion to exceed the page limitations set by Local Rule 7.8(b)(3), and a brief in support of their motion to partially dismiss the amended complaint. (Docs. 20–23.)

- 4 -

Approximately a week later, Leppien filed a motion to compel discovery. (Doc. 24). On July 19, 2024, Leppien filed "Rule 31(B)(c)(2) Depositions by written [sic] Questions," which appears to have been intended for Defendants. (Doc. 25.)

On August 29, 2024, the Court, in the interests of judicial efficiency and economy, entered an Order which, *inter alia*, (1) granted Leppien leave to file an amended complaint by September 27, 2024, (2) denied Leppien's motion to compel discovery as premature, (3) dismissed Defendants' motions to dismiss Leppien's original complaint and purported amended complaint without prejudice, and (4) directed the Clerk of Court to strike Leppien's interrogatories from the docket. (Doc. 26.) The Court also instructed the parties that if Leppien did not file an amended complaint by September 27, 2024, the case would proceed on his original complaint, and Defendants could file an appropriate response to the original complaint. (*Id.* ¶10.) Leppien did not file an amended complaint, and Defendants filed a motion to dismiss the original complaint and a brief in support of the motion on October 8, 2024, and November 6, 2024, respectively. (Docs. 27, 29.)[3] Leppien did not file a response in opposition to the motion to dismiss.

---

[3] Defendants sought and received an extension of time to file their brief in support of their motion to dismiss. (Docs. 28, 30.)

On February 18, 2025, the Court issued a Memorandum and Order which, *inter alia*: (1) granted Defendants' motion to dismiss Leppien's complaint insofar as they sought dismissal of his Section 1983 claims for violations of his due process rights under the Fifth and Fourteenth Amendments as well as his Eighth Amendment conditions-of-confinement claims, and dismissed those claims with prejudice, *see* (Docs. 31 at 17–18, 27–28, 36–39, 45; 32 at 1–2); (2) granted Defendants' motion to dismiss insofar as they sought dismissal of Leppien's Section 1983 official-capacity claims for monetary damages and individual-capacity claims for compensatory damages, claims against Harry and Gourley for their lack of personal involvement, and Eighth Amendment failure-to-protect claims relating to Ossman's conduct towards him, and dismissed those claims without prejudice, *see* (Docs. 31 at 18–27, 33–36, 45; 32 at 1–2); (3) denied Defendants' motion to dismiss insofar as they sought dismissal of Leppien's First Amendment retaliation claim against Davidson, *see* (Docs. 31 at 39–43, 45; 32 at 1–2); and (4) dismissed with prejudice Leppien's Section 1983 claims pertaining to DC-ADM 804 pursuant to the Court's screening authority under 28 U.S.C. §1915A. *See* (Docs. 31 at 43–45; 32 at 2). The Court also granted Leppien leave to file an amended complaint within thirty days and warned him that the case would proceed on only his First Amendment

retaliation claim against Davidson and Eighth Amendment failure-to-protect claim against Wright if he did not timely file an amended complaint. *See* (Doc. 32 at 2–3).

Leppien filed a timely amended complaint, which the Clerk of Court docketed on March 10, 2025. (Doc. 33.) Leppien once again asserts Section 1983 claims against all Defendants named in his original complaint. *See* (*id.* at 1–3). Leppien alleges that while he was incarcerated at SCI Camp Hill on October 16, 2023, the following occurred:

> [Davidson, Harry, Gourley, and Wright f]ailed to do their job as employees of the [DOC] and inadvertly [sic] put my life in danger by [t]elling inmates of [t]he nature of the charges I am in prison over. I was put in situations where I was verbally harassed, put in danger[,] and degraded due to the actions of the employees of the [DOC].

(*Id.* at 4.) Leppien asserts that these actions violated his Eighth Amendment right to be free from cruel and unusual punishment and constituted retaliation in violation of the First Amendment. *See* (*id.* at 5). He describes his injuries as "[d]enial of grievance remedies due to pain [and] suffering, mental [sic] anguish." (*Id.*) For relief, Leppien seeks "injunctive relief." (*Id.*)

On March 25, 2025, Defendants filed a Rule 12(b)(6) motion to dismiss Leppien's amended complaint (Doc. 34), and they filed a brief in support of their motion on April 9, 2025 (Doc. 35). On April 24, 2025, Leppien filed a motion for an extension of time to file a response to Defendants' motion to

dismiss (Doc. 36), and he filed a motion to appoint counsel on May 21, 2025 (Doc. 37). On September 29, 2025, the Court issued an Order granting Leppien's motion for an extension of time to file a response to Defendants' motion to dismiss, extended the time for him to file a response to October 20, 2025, and denied without prejudice his motion to appoint counsel. *See* (Doc. 38 at 1–2).

To date, Leppien has not filed a response to Defendants' Rule 12(b)(6) motion to dismiss or sought another extension of time to do so. Due to this failure, Defendants filed a Rule 41(b) motion to dismiss this action for lack of prosecution, along with a supporting brief, on February 5, 2026. (Docs. 40, 41.) Leppien also failed to file a response to this motion or seek an extension of time to file a response. As such, Defendants' motions to dismiss are ripe for resolution.

## II.    LEGAL STANDARDS

### A.    Motions to Dismiss Under Rule 12(b)(6)

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard "does not require detailed factual allegations, but it demands more than an unadorned the-defendant-unlawfully-harmed me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (internal quotations omitted). Thus, a complaint that contains only "labels and conclusions," or a "formulaic recitation of the elements of a cause of action" is insufficient. *Id.*

A defendant may move to dismiss a complaint "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. Facial plausibility is achieved "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility does not require probability but "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "merely consistent with" liability do not satisfy this standard. *Id.*

While the Court at this stage accepts the complaint's factual allegations as true, the Court does not do so to a plaintiff's legal conclusions. *See id.* ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). In addition, "[d]etemining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

- 9 -

This federal pleading standard requires district courts to conduct the following analysis when addressing a motion to dismiss a complaint:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to show such an entitlement with its facts.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (internal citations and quotations omitted).

*Pro se* filings must be construed "liberally." *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021). That means that the Court should "remain flexible," and "apply the relevant legal principle even when the complaint has failed to name it." *Id.* It does not mean, however, that *pro se* litigants may "flout procedural rules—they must abide by the same rules that apply to all other litigants." *Id.* Thus, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

### B.  Involuntary Dismissals Under Rule 41(b)

Rule 41(b) allows for the dismissal of an action for failure of a plaintiff "to prosecute or to comply with these rules or a court order[.]" Fed. R. Civ. P. 41(b). District courts also have the inherent power to dismiss an action *sua*

- 10 -

*sponte* for failure to prosecute. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991); *see also R & C Oilfield Servs. LLC v. Am. Wind Transp. Grp. LLC*, 45 F.4th 655, 661 (3d Cir. 2022) (stating that "[c]ourts possess inherent power to manage their own affairs so as to achieve the orderly and expeditious disposition of cases" and that "[t]his includes the authority to dismiss a case for lack of prosecution" (citation, internal citation, and internal quotation marks omitted)).

When determining whether to dismiss an action with prejudice for a plaintiff's failure to prosecute under Rule 41(b), the Court considers and balances the following six (6) factors identified by the Third Circuit Court of Appeals:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

*Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868–70 (3d Cir. 1984); *see also Spain v. Gallegos*, 26 F.3d 439, 454–55 (3d Cir. 1994) ("Ordinarily, when a court is determining *sua sponte* or upon motion of a defendant whether to dismiss because of a plaintiff's failure to prosecute" the court must consider the *Poulis* factors). However, no single factor is dispositive, and not

- 11 -

all factors must be satisfied for the Court to dismiss an action. *See Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992); *Briscoe v. Klaus*, 538 F.3d 252, 263 (3d Cir. 2008) (stating that "we have also made it clear that 'not all of the *Poulis* factors need be satisfied in order to dismiss a complaint'" (quoting *Mindek*, 964 F.2d at 1373)). Nevertheless, because "'dismissals with prejudice . . . are drastic sanctions' . . . it is imperative that the District Court have a full understanding of the surrounding facts and circumstances pertinent to the *Poulis* factors before it undertakes its analysis." *See Briscoe*, 538 F.3d at 258 (quoting *Poulis*, 747 F.2d at 867–68).

## C.    Dismissing Actions When a Plaintiff Fails to File a Response to a Rule 12(b)(6) Motion to Dismiss

Local Rule 7.6 provides that a plaintiff must file a response to a defendant's Rule 12(b)(6) motion to dismiss within fourteen days after service of the moving defendant's brief in support of the motion. *See* M.D. Pa. L.R. 7.6 ("Any party opposing any motion, other than a motion for summary judgment, shall file a brief in opposition within fourteen (14) days after service of the movant's brief . . . ."). They also provide that the Court will deem a plaintiff to be unopposed to the Court granting the Rule 12(b)(6) motion if they fail to timely respond to the motion. *See id.* ("Any party who fails to comply with this rule shall be deemed not to oppose such motion.").

Despite the express language of this Local Rule, the Third Circuit in *Stackhouse v. Mazurkiewicz*, 951 F.2d 29 (3d Cir. 1991), established certain guideposts for district courts before granting Rule 12(b)(6) motions as unopposed pursuant to a Local Rule. In *Stackhouse*, the Third Circuit held that district courts generally should not dismiss an action "solely on the basis of [a] local rule without any analysis of whether the [operative] complaint failed to state a claim upon which relief can be granted, as provided in [Rule] 12(b)(6)," because "the case is simply not being dismissed because the [operative] complaint has failed to state a claim upon which relief may be granted. Rather, it is dismissed as a sanction for failure to comply with the local court rule." 951 F.2d at 30 (citing *Anchorage Assocs. v. V.I. Bd. of Tax. Rev.*, 922 F.2d 168, 174 (3d Cir. 1990)); *see also Cammarano v. Weaver*, No. 25-cv-2117, 2026 WL 27561, at *2 (E.D. Pa. Jan. 5, 2026) ("[G]ranting a defendant's motion to dismiss a case where the plaintiff has failed to respond thereto is effectively akin to sanctioning the plaintiff for failing to comply with a local rule or court order." (citing *Stackhouse*, 951 F.2d at 29–30)). However, in articulating this holding, the Third Circuit emphasized that "our holding is not broad" and did "not suggest that the district court may never rely on the local rule to treat a motion to dismiss as unopposed and subject

- 13 -

to a dismissal without a merits analysis." *Stackhouse*, 951 F.2d at 30. Instead, the Third Circuit explained that:

> There may be some cases where the failure of a party to oppose a motion will indicate that the motion is in fact not opposed, particularly if the party is represented by an attorney and in that situation the rule may be appropriately invoked. Nor do we suggest that if a party fails to comply with the rule after a specific direction to comply from the court, the rule cannot be invoked.

*Id.*

Following *Stackhouse*, the Third Circuit has repeatedly stated that district courts should generally not dismiss actions based solely on a local rule in circumstances where the plaintiff failed to respond to a Rule 12(b)(6) motion to dismiss. *See, e.g., Regaolo v. Target Corp.*, No. 25-2514, 2026 WL 280891, at *1 (3d Cir. Feb. 3, 2026) (unpublished) (concluding that the district court "abused its discretion" in dismissing the pro se plaintiff's complaint for failing to oppose the defendant's Rule 12(b)(6) motion); *Brzozowski v. Pa. Tpk. Comm'n*, 738 F. App'x 731, 734 (3d Cir. 2018) (unpublished) (determining that the district court erred in granting defendants' Rule 12(b)(6) motion to dismiss the plaintiff's amended complaint as unopposed); *cf. Washington v. Wenerowicz*, No 21-2741, 2022 WL 39870, at *2 n.5 (3d Cir. Jan. 5, 2022) (unpublished) ("To the extent that the District Court may have granted the Medical Defendants' motion to dismiss as unopposed pursuant to [Eastern District of Pennsylvania Local

- 14 -

Rule 7.1(c)], based on Washington's failure to file a response, this would likely be improper."). Because "[a] dismissal of this kind is 'a sanction for failure to comply with the local court rule,'" district courts "generally must consider the relevant factors set forth in [*Poulis*]" before taking "the drastic step of dismissing a complaint as a sanction." *Regaolo*, 2026 WL 280891, at *1 (quoting *Stackhouse*, 951 F.2d at 30). Nevertheless, "[t]here are exceptions to these principles[,] such as when a counseled party truly does not oppose a motion, when a party fails to comply with a rule despite a specific directive to do so, or when a party's conduct makes adjudication of the case impossible . . . ." *Id.* at *1 n.2 (citations omitted).

### D.    Section 1983

Section 1983 is the statutory vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. *See* 42 U.S.C. §1983. This statute states in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution of laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

*Id.* "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state

- 15 -

actors." *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284–85 (2002)). "To state a claim under §1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### E.    First Amendment Retaliation Claims

To plead a prima facie First Amendment retaliation claim, a plaintiff must allege that: "(1) [their] conduct was constitutionally protected; (2) [they] suffered an adverse action at the hands of prison officials; and (3) [their] constitutionally protected conduct was a substantial or motivating factor in the decision to discipline [them]." *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016) (citations omitted). As for the first element of a plaintiff's prima facie case, the filing of lawsuits and prison grievances constitutes activity protected by the First Amendment. *See id.* (reiterating prior holding that a prisoner-plaintiff engages in constitutionally protected activity when they file a grievance against a prison official (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003))); *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002) (acknowledging its prior holding "that falsifying misconduct reports in retaliation for an inmate's resort to legal process is a violation of the First

- 16 -

Amendment's guarantee of free access to the courts" (citation omitted)); *Allah v. Seiverling*, 229 F.3d 220, 223–25 (3d Cir. 2000) (concluding that the prisoner-plaintiff stated a First Amendment retaliation claim where he alleged that he had been kept in administrative segregation in retaliation for filing civil rights claims against prison officials).

Regarding the second element of a plaintiff's prima facie case, an adverse action is one that is "sufficient to deter a person of ordinary firmness from exercising [their] [constitutional] rights[.]" *Mitchell*, 318 F.3d at 530 (second alteration in original) (citations and internal quotation marks omitted); *Fantone v. Latini*, 780 F.3d 184, 191 (3d Cir. 2015), *as amended* (Mar. 24, 2015) (explaining that an adverse action must be "sufficient to deter a person of ordinary firmness from exercising [their] constitutional rights . . ." (citation omitted)). However, to be actionable under Section 1983, the alleged adverse action must be more than *de minimis. See McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006) (explaining that the alleged retaliatory conduct "need not be great in order to be actionable, but it must be more than de minimis" (citations and internal quotation marks omitted)).

Finally, as for the third element of a plaintiff's prima facie case, the Court observes that, "[b]ecause motivation is almost never subject to proof by direct evidence," a plaintiff must typically "rely on circumstantial evidence

- 17 -

to prove a retaliatory motive." *Watson*, 834 F.3d at 422. The plaintiff "can satisfy [their] burden with evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link." *Id.* (footnote omitted).

### F.    Eighth Amendment Failure-to-Protect Claims

For a prisoner-plaintiff to plausibly allege an Eighth Amendment failure-to-protect claim they must allege that: (1) they were incarcerated under conditions posing a substantial risk of serious harm; and (2) the prison officials involved had a sufficiently culpable state of mind. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Specifically, the inmate must allege facts showing that the prison official knew of and disregarded an excessive risk to inmate health or safety. *See Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997).

### III.    DISCUSSION

Defendants move for dismissal of Leppien's amended complaint for his failure to prosecute under Rule 41(b) insofar as he "disregard[ed] this Court's Order to respond to [their m]otion to [d]ismiss" and otherwise fail to act in this case during the past several months. *See* (Doc. 41 at 1–4). The Court will

grant this motion and dismiss this action with prejudice due to Leppien's failure to prosecute.[4]

In reaching this decision, the Court notes that if Defendants had not filed their Rule 41(b) motion to dismiss for lack of prosecution, this Court likely could not grant their Rule 12(b)(6) motion to dismiss as unopposed based on applicable Third Circuit caselaw. Although Defendants correctly point out that Leppien did not file a response to their Rule 12(b)(6) motion despite the Court's September 29, 2025 Order extending the time for him to file his response to October 20, 2025, *see* (Doc. 38 at 1), the Court did not direct him to file a response and warn him that his failure to file a response could result in the dismissal of this case for failure to prosecute. *See, e.g.*, *Brzozowski*, 738 F. App'x at 734 (explaining that, *inter alia*, before dismissing the plaintiff's operative complaint, the district court directed him to respond to the motion, warned him that dismissal was possible if he failed to respond, and the plaintiff failed to respond, and noting that "[t]hese considerations [were] relevant to some of the *Poulis* factors" but did "not warrant dismissal by themselves"). Moreover, because dismissing an action for failure to prosecute is an "extreme sanction reserved for the instances in which it is

---

[4] Because the Court is granting Defendants' Rule 41(b) motion, the Court will not address their Rule 12(b)(6) motion and will deny it as moot.

- 19 -

justly merited," *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 221-22 (3d Cir. 2003), a district court should "provide the plaintiff with an opportunity to explain [their] reasons for failing to prosecute the case . . . prior to dismissing [the] case." *Briscoe*, 538 F.3d at 258. This Court has not issued an Order directing Leppien to explain his failure to act in this case. Therefore, if Defendants did not file their Rule 41(b) motion, the Court would have to issue at least one additional Order, to which Leppien would have to not respond or insufficiently respond, before considering whether to dismiss this action as a sanction for his failure to respond to Defendants' Rule 12(b)(6) motion to dismiss.

Since, however, Defendants filed a Rule 41(b) motion to dismiss for lack of prosecution based primarily on Leppien's failure to respond to their Rule 12(b)(6) motion, and he has not responded to this motion, the circumstances here compel a different result. It does not appear that the Third Circuit has addressed the viability of a Rule 41(b) involuntary dismissal for lack of prosecution in circumstances where a *pro se* plaintiff not only failed to respond to a defendant's Rule 12(b)(6) motion to dismiss, but they also failed to respond to a defendant's Rule 41(b) motion to dismiss for lack of prosecution based primarily on the plaintiff's failure to respond to the Rule 12(b)(6) motion to dismiss. Nevertheless, the Third Circuit's expressed

concerns in situations where a district court grants a Rule 12(b)(6) motion as unopposed are ameliorated in this case due to Defendants filing their Rule 41(b) motion to dismiss for lack of prosecution.

Defendants' Rule 41(b) motion provides Leppien with notice of the grounds for their motion—his failure to prosecute by, *inter alia*, failing to respond to their Rule 12(b)(6) motion—and informs him that they are requesting to have the Court dismiss his action with prejudice as a sanction for his failure to prosecute. This motion also provides Leppien with the opportunity to explain his failure to prosecute and argue to the Court why dismissal for lack of prosecution is unwarranted. Overall, Defendants' Rule 41(b) motion to dismiss notifies Leppien that the Court could sanction him by dismissing this action for his failure to prosecute and provides him with the opportunity to be heard before the Court resolves the motion.

Considering that Leppien also failed to respond to Defendants' Rule 41(b) motion, the Court could deem him to be unopposed to the Court granting the motion pursuant to Local Rule 7.6. However, considering that the Third Circuit has reiterated that a district court should not dismiss an action with prejudice without considering the *Poulis* factors except in limited circumstances which are not present in this case, *see Regaolo*, 2026 WL 280891, at *1 n.2 (discussing exceptions), the Court will now analyze and

balance each *Poulis* factor to determine whether dismissing this action with prejudice for lack of prosecution is warranted.

## A.    The Party's Personal Responsibility

The first factor is the extent of the party's personal responsibility. Here, Leppien is personally responsible for his failure to respond to Defendants' motions to dismiss, as well as to prosecute this case generally. Leppien is prosecuting this matter in a *pro se* capacity and has no one else to blame for his failure to act in this case. *See Briscoe*, 538 F.3d at 258–59 ("[I]t is logical to hold a pro se plaintiff personally responsible for delays in [their] case because a pro se plaintiff is solely responsible for the progress of [their] case . . . ."); *see also Clarke v. Nicholson*, 153 F. App'x 69, 73 (3d Cir. 2005) (unpublished) ("[U]nlike a situation where dismissal is predicated upon an attorney's error, the plaintiff here was pro se and directly responsible for her actions and inaction in the litigation."). Therefore, since Leppien is personally responsible for failing to prosecute this case, had approximately one year to file a response to Defendants' Rule 12(b)(6) motion and approximately forty-five days to file a response to their Rule 41(b) motion and failed to respond, and had notice by virtue of Defendants' Rule 41(b) motion that he risked dismissal of this case if he failed to respond, this first factor heavily weighs in favor of dismissal.

- 22 -

### B.   Extent of Prejudice to Defendants

The second factor is the extent of prejudice to Defendants due to Leppien's failure to prosecute. "Generally, prejudice includes the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party." *Briscoe*, 538 F.3d at 259 (citation and internal quotation marks omitted). However, prejudice "is not limited to irremediable or irreparable harm. It also includes the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy." *Id.* (citations and internal quotation marks omitted). For example, prejudice can "include the burden that a party must bear when forced to file motions in response to the strategic discovery tactics of an adversary[.]" *Ware*, 322 F.3d at 223 (citation omitted); *see also Poulis*, 747 F.2d at 868 (concluding that the district court's finding of prejudice to the defendant was "supported by the record" where "[t]he interrogatories were never answered nor were objections filed[, and] defense counsel was obliged to file a motion to compel answers, and was obliged to file its pretrial statement without the opportunity to review plaintiffs' pretrial statement which was due to be filed first").

Here, this second factor weighs against dismissal. "At this point, the Defendants' motion[s] to dismiss [are] still pending, and as far as the Court

- 23 -

is aware, no further action has been taken by the Defendants and no further costs incurred." *Cleary v. Atria Mgmt. Co., LLC*, No. 15-cv-2779, 2015 WL 4770913, at *2 (E.D. Pa. Aug. 13, 2015) (citing *Deen–Mitchell v. Lappin*, 514 F. App'x 81, 87 (3d Cir. 2013) (unpublished)); *see also Deen-Mitchell*, 514 F. App'x at 87 ("[W]e cannot determine how the proposed defendants have been prejudiced because the case did not have the opportunity to proceed to discovery and because [the plaintiff]'s complaint gives adequate notice of his claims.").

## C.    The Plaintiff's History of Dilatoriness

The third factor is whether Leppien has a history of dilatoriness, which can be shown where there has been "extensive or repeated delay or delinquency . . . such as consistent non-response to interrogatories, or consistent tardiness in complying with court orders." *Adams v. Trustees of N.J. Brewery Emps.' Pension Tr. Fund*, 29 F.3d 863, 873–74 (3d Cir. 1994). In this case, Leppien has demonstrated a history of dilatoriness. He never filed an amended complaint following the Court's August 29, 2024 Order, despite having a month to do so (Doc. 26), and he did not file a response to Defendants' Rule 12(b)(6) motion to dismiss his original complaint (Doc. 27), resulting in the Court resolving Defendants' motion approximately three months after they filed their supporting brief without any input from Leppien

- 24 -

(Docs. 31, 32). Additionally, over the past year, Leppien failed to respond to Defendants' Rule 12(b)(6) motion to dismiss his amended complaint (despite receiving an extension of time to do so). Moreover, even though Defendants filed their Rule 41(b) motion to dismiss, which placed Leppien on notice of the possibility that the Court could dismiss this action with prejudice for his lack of prosecution, he still did not respond or seek an extension of time to do so. Accordingly, this factor weighs in favor of dismissal.

### D.    Whether the Plaintiff's Conduct Was Willful or in Bad Faith

The fourth factor is whether Leppien's conduct was willful or in bad faith. In evaluating this factor, the Court must determine whether the conduct at issue reflects mere inadvertence or negligence, or conversely, whether it is "the type of willful or contumacious behavior which [can be] characterized as 'flagrant bad faith.'" *Scarborough v. Eubanks*, 747 F.2d 871, 875 (3d Cir. 1984) (citing *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)); *see also Beaver Res. Corp. v. Brawand*, 618 F. App'x 736, 739 (3d Cir. 2015) (unpublished) ("Willfulness and bad faith go beyond mere negligence and involve intentional or self-serving behavior."). Here, Leppien has not acted despite the Court granting him an extension to respond to Defendants' Rule 12(b)(6) motion and the filing of Defendants' Rule 41(b)

motion to dismiss. Therefore, the Court finds his conduct to be willful, and this fourth factor weighs in favor of dismissal.[5]

### E.    The Effectiveness of Sanctions Other Than Dismissal

The fifth factor is the effectiveness of sanctions other than dismissal. "[S]anctions less than dismissal [are] ineffective when a litigant . . . is proceeding *pro se* and *in forma pauperis*." *Lopez v. Cousins*, 435 F. App'x 113, 116 (3d Cir. 2011) (unpublished) (citing *Briscoe*, 538 F.3d at 262–63); *see also Briscoe*, 538 F.3d at 262–63 ("[W]here a plaintiff is proceeding *pro se*, and moreover, is proceeding *in forma pauperis*, we have upheld the District Court's conclusion that no alternative sanctions existed because monetary sanctions, including attorney's fees, 'would not be an effective alternative.'" (quoting *Emerson v. Thiel Coll.*, 296 F.3d 184, 191 (3d Cir. 2002))).

In this case, Leppien is proceeding *pro se* but not *in forma pauperis*, as he paid the filing fee for this case. Nevertheless, because Leppien remains incarcerated and indicated in his motion to appoint counsel that he is unable to afford counsel, *see* (Doc. 37 at 1), the Court does not find that

---

[5] Even if the Court determined that Leppien's conduct was not willful, *see, e.g., El-Hewie v. Paterson Pub. Sch. Dist.*, No. 13-cv-5820, 2015 WL 5306255, at \*4 (D.N.J. Sept. 10, 2015) (considering fourth *Poulis* factor and noting that the plaintiff had been "silent, and . . . silence is ambiguous"), the Court would consider this factor to be neutral.

the threat of monetary compliance (including fines, costs, or payment of attorney's fees), or another other available sanction, is likely to prompt his compliance. Accordingly, this fifth factor weighs in favor of dismissal.

## F.    The Meritoriousness of the Claims

The sixth and final factor is the meritoriousness of Leppien's claims in his amended complaint.[6] The standard for meritoriousness is whether the

---

[6] In his original complaint, Leppien alleged that all or some of Defendants violated his constitutional rights from July 1, 2022, through mid-July 2023. *See* (Doc. 1-1 ¶¶10–21, 24–31). In his amended complaint, Leppien asserts that his Section 1983 claims relate to events which occurred on a single date, October 16, 2023, which was approximately three months after the last event described in his original complaint and was the date he filed his original complaint. *See* (Doc. 33 at 4). Thus, instead of filing an amended complaint, Leppien filed a supplemental complaint. *See* 6A WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE §1504 (3d ed. updated Sept. 2025) ("Amended and supplemental pleadings differ in two respects. The former relate to matters that occurred prior to the filing of the original pleading and entirely replace the earlier pleading; the latter deal with events subsequent to the pleading to be altered and represent additions to or continuations of the earlier pleadings." (footnotes omitted)). He did not have leave of Court to file a supplemental complaint even though the Court recognizes that under certain circumstances a supplemental complaint can remedy defects in a prior complaint. *See* Fed. R. Civ. P. 15(d) ("The court may permit supplementation even though the original pleading is defective in stating a claim or defense.").

As another district court has explained:

'[T]he filing of an action fixes the controversy." *Rodgers v. Hawley*, 14 F. App'x 403, 408 (6th Cir. 2001). [Thus], if a plaintiff "desire[s] to litigate events occurring after [they] filed [their] . . . claim, [the plaintiff] need[s] to file a supplemental pleading under"

*(footnote continued on next page)*

allegations in Leppien's amended complaint, "if established at trial, would

support [his] recovery or . . . would constitute a complete defense." *Poulis*,

747 F.2d at 870. As explained below, Leppien has not pleaded a potentially

meritorious claim against any Defendant.[7]

---

Federal Rule of Civil Procedure 15(d). [*Id.*]; *see also*[], *El-Khali v. Usen*, No. 21-1140, 2021 WL 4621828, at *4 (6th Cir. Oct. 7, 2021) ("In the absence of a supplemental pleading under Fed. R. Civ. P 15(d), El-Khalil cannot predicate his allegations on events occurring after the [first amended complaint].").

*Gresham v. Honda Dev. & Mfg. of Am., LLC*, No. 23-cv-4015, 2026 WL 682433, at *5 n.10 (S.D. Ohio Mar. 9, 2026); *see also YCF Trading Inc. v. Skullcandy, Inc.*, 781 F. Supp. 3d 56, 98 (E.D.N.Y. 2025) ("if the proposed amended complaint includes allegations about events that occurred after the original complaint was filed, Rule 15(d)[,] rather than Rule 15(a), applies." (citations omitted)). Under Rule 15(d), "[o]n motion and reasonable notice," the Court may "permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). Moreover, this Rule provides that "[t]he court may permit supplementation even though the original pleading is defective in stating a claim . . . .," *id.*, and the Third Circuit has determined that "a supplemental complaint under Rule 15(d) that relates back to the original complaint may cure the filing defect in the original complaint." *Garrett v. Wexford Health*, 938 F.3d 69, 83–84 (3d Cir. 2019) (citing *T Mobile Ne., LLC v. City of Wilmington*, 913 F.3d 311, 328 (3d Cir. 2019)).

[7] The Court would have applied this analysis when screening Leppien's amended complaint pursuant to 28 U.S.C. §1915A(a)–(b) and would have dismissed the amended complaint with prejudice for failure to state a claim under Section 1915A(b)(1).

### 1.    Claims Against Ossman

As explained above, the Court previously dismissed Leppien's Section 1983 claims against his fellow inmate, Ossman, because he was not a proper Defendant for purposes of this statute. *See* (Doc. 7 ¶4 & n.1). Despite this dismissal, Leppien once again names Ossman as a Defendant in the caption and body of his complaint. *See* (Doc. 33 at 1, 3). However, none of the limited factual allegations in the amended complaint relate to Ossman, and Leppien does not mention Ossman by name in his statement of facts. *See* (*id.* at 4). Because Leppien does not allege any facts that would allow this Court to find that Ossman, another inmate, is a state actor subject to suit under Section 1983, he fails to plead a plausible claim for relief against Ossman.

### 2.    Eighth Amendment Failure-to-Protect Claims

The Court construes Leppien's amended complaint as asserting that Defendants failed to protect him when they told other inmates of the "nature of [his] charges," which placed his "life in danger." (Doc. 33 at 4.) In resolving Defendants' motion to dismiss Leppien's original complaint, the Court explained that Leppien had alleged a plausible failure-to-protect claim against Wright where he "generally allege[d] that Wright told other inmates about his 'charges,' showed an inmate Leppien's 'case' on the computer, and told inmates that he is a 'child molester.'" (Doc. 31 at 35 (citations

- 29 -

omitted)). However, unlike his allegations in his original complaint, Leppien did not identify the nature of his charges or state facts indicating how Defendants allegedly sharing his charges with other inmates placed him in danger in his amended complaint, and he cannot use any allegations asserted in his original complaint to supplement or add to his allegations in his amended complaint. *See* (Doc. 31 ¶3 ("The amended complaint shall be a complete document that does not rely on the original complaint or other papers filed in this case to state a claim.")). In addition, although Leppien claims that he was subjected to verbal harassment, *see* (Doc. 33 at 4), such a claim cannot form the basis for a failure-to-protect claim. *See Cessna v. Lewis*, No. 14-cv-361, 2015 WL 1299733, at *10 (M.D. Pa. Mar. 23, 2015) ("To the extent that the claim asserts a denial of personal safety or a failure to protect, arising out of the alleged harassment, acts of verbal harassment and taunting alone cannot qualify as constitutional violations."). Moreover, even though Leppien alleges that he was placed in danger, he does not allege any facts describing the specific danger he faced. Overall, Leppien's allegations fail to satisfy the objective element of a failure-to-protect claim.

Leppien's allegations also do not satisfy the subjective element of a failure-to-protect claim because they do not show that Defendants had a sufficiently culpable state of mind. Leppien alleges that Defendants

"*inadvert[ent]ly* put [his] life in danger by [t]elling inmates of [t]he nature of [his] charges." (Doc. 33 at 4 (emphasis added)). This allegation implicates negligence, not deliberate indifference, and therefore does not rise to the level of a constitutional violation. *See Hope v. Warden York County Prison*, 972 F.3d 310, 330 (3d Cir. 2020) ("Deliberate indifference requires significantly more than negligence."). Accordingly, Leppien fails to allege a plausible Eighth Amendment failure-to-protect claim against Defendants.

### 3.    First Amendment Retaliation Claims

Leppien asserts that he raises First Amendment retaliation claims in his amended complaint. *See* (Doc. 33 at 4). However, he does not allege facts that would establish any element of such a claim. For instance, Leppien does not allege that he engaged in constitutionally protected conduct. In this regard, although Leppien twice refers to the "[d]enial of grievance remedies" in different sections of the form complaint from where he set forth the facts in support of his claims (Doc. 33 at 5), it is not reasonably inferable by these limited references that he filed any grievance.

Even if it was inferable from the amended complaint that Leppien engaged in protected conduct by filing a grievance, *see Watson*, 834 F.3d at 422 (explaining that a prisoner's filing of lawsuits and prison grievances constitutes activity protected by the First Amendment), he does not allege

any adverse action he suffered due to him engaging in protected activity. Furthermore, although Leppien asserts a retaliation claim, at no point does he allege in his statement of facts that any Defendant retaliated against him or specify facts that would establish that his constitutionally protected conduct was a substantial or motivating factor for retaliating against him.[8]

---

[8] The Court recognizes that the Third Circuit has held that a plaintiff's "use of the word 'retaliation' in [their] complaint sufficiently implies a causal link between [their] complaints and the misconduct charges filed against [them]." *Mitchell*, 318 F.3d at 530; *see also Kelly v. York Cnty. Prison*, 340 F. App'x 59, 61 (3d Cir. 2009) (unpublished) ("[T]he word retaliation in his complaint sufficiently implies a causal link between his complaints and denial of employment." (internal quotation marks omitted) (citing *Mitchell*, 318 F.3d at 530); *Molina v. Rivello*, No. 23-cv-1111, 2023 WL 8359951, at *5 (M.D. Pa. Dec. 1, 2023) ("Molina satisfies the third requirement for a retaliation claim because for the purpose of a motion to dismiss, 'the word "retaliation" in [the] complaint sufficiently implies a causal link between [plaintiff's] complaints and the misconduct charges filed against him.'" (alterations in original) (quoting *Mitchell*, 318 F.3d at 530)). However, it is unclear whether this holding remains viable following the Supreme Court's decisions in *Twombly* and *Iqbal* because such an allegation likely constitutes a legal conclusion which is "not entitled to the assumption of truth." *Twombly*, 556 U.S. at 679; *see also Surina v. S. River Bd. of Educ.*, No. 20-2804, 2022 WL 264464, at *4 (3d Cir. Jan. 27, 2022) ("[A] plaintiff must allege any facts plausibly indicating a causal link between the reporting and allegedly constitutionally protected conduct." (citing *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007))); *Rodriguez-Vives v. P.R. Firefighters Corps of P.R.*, 743 F.3d 278, 286 (1st Cir. 2014) ("A conclusory allegation . . . is one which simply asserts a legal conclusion, such as 'I was retaliated against,' not a specific factual allegation . . . ."); *Ashley-Boyd v. Monroe Cnty. Corr. Fac.*, No. 23-cv-01864, 2024 WL 4156849, at *3 (M.D. Pa. Sept. 11, 2024) (determining that plaintiff's "single[-]sentence" allegation that they were retaliated against for submitting complaints about their conditions of confinement" was "insufficient to plausibly plead a retaliation

*(footnote continued on next page)*

Therefore, the Court concludes that Leppien also fails to state a plausible First Amendment retaliation claim.

### G.    Balancing the Factors

When balancing the *Poulis* factors, there is no "magic formula" or mathematical calculation used to direct a particular result. *See Briscoe*, 538 F.3d at 263. Also, as stated above, "no single *Poulis* factor is dispositive," and that "not all of the *Poulis* factors need be satisfied in order to dismiss a complaint." *Ware*, 322 F.3d at 222; *Mindek*, 964 F.2d at 1373. In balancing the factors here, the Court is mindful that dismissal "is only appropriate in limited circumstances and doubts should be resolved in favor of reaching a decision on the merits." *Liggon-Reading v. Est. of Sugarman*, 659 F.3d 258, 260 n.1 (3d Cir. 2011) (citations omitted).

In this case, the first, third, fourth, fifth, and sixth factors weigh in favor of dismissal. The only factor weighing against dismissal is the second factor. Upon balancing these factors, the Court finds that dismissing Leppien's amended complaint with prejudice is warranted and appropriate in this case.

---

claim, as it is merely a legal conclusion"). Regardless, Leppien does not use the word "retaliate" when stating the facts in support of his claims. *See* (Doc. 33 at 4).

## IV.  CONCLUSION

For the reasons stated above, the Court will grant Defendants' Rule 41(b) motion to dismiss for lack of prosecution, dismiss with prejudice Leppien's amended complaint, deny Defendants' Rule 12(b)(6) motion to dismiss as moot, and direct the Clerk of Court to close this case. An appropriate Order follows.

_____
**MALACHY E. MANNION**
**United States District Judge**

**DATE:** 3/25/26

23-1773-02